# No. 25-3141

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

RICARDO APARECIDO BARBOSA DA CUNHA,
*Petitioner-Appellee*,

v.

TODD M. LYONS, Acting Directory U.S. Immigrations and Customs Enforcement, KRISTI NOEM, U.S. Secretary of Homeland Security, JOSEPH E. FREDEN, Deputy Field Office Director, U.S. Immigration and Customs Enforcement, PAMELA BONDI, U.S. Attorney General, JOHN DOE, Director of Executive Office for Immigration Review,
*Respondents - Appellants*,
ANTONE D. MONIZ, Superintendent, Plymouth County Correctional Facility, PATRICIA HYDE, Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge,
*Respondents*.

On Appeal from the United States District Court
for the Western District of New York
No. 6:25-cv-6532 (Vacca, J.)

## APPELLANT'S OPENING BRIEF

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

STEPHEN J. FLYNN
Assistant Director

TIFFANY H. LEE
Assistant United States Attorney
Western District of New York

JESSICA R. LESNAU
Trial Attorney

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044
(202) 616-9346

*Counsel for Respondent-Appellant*[1]

[1] The district court, following the parties' stipulation, determined that Joseph E. Freden, Deputy Field Office Director, U.S. Immigration and Customs Enforcement, is the only proper Respondent and ordered that the other Respondents be dismissed and removed from the docket. App'x at 45; *see* App'x at 21 (letter stipulating to custodian). Respondent maintains that Mr. Freden is the only proper Respondent before this Court.

## TABLE OF CONTENTS


INTRODUCTION .......... 1

STATEMENT OF JURISDICTION .......... 4

STATEMENT OF THE ISSUE .......... 4

STATEMENT OF THE CASE .......... 4

I. Statutory Framework .......... 4

A. The pre-IIRIRA framework gave preferential treatment to aliens who unlawfully entered and were present in the United States. .......... 4

B. IIRIRA eliminated the preferential treatment of aliens who unlawfully entered the United States and mandated detention of "applicants for admission." .......... 7

C. The plain language of §1225(b)(2)(A) requires detention of all applicants for admission. .......... 13

II. Factual Background and Procedural History .......... 15

A. Petitioner entered the United States without admission and was detained for removal proceedings.. .......... 15

B. The district court granted the habeas petition and ordered DHS to provide Petitioner a bond hearing.. .......... 16

SUMMARY OF ARGUMENT .......... 18

STANDARD OF REVIEW .......... 20

ARGUMENT .......... 21

I. Section 1225(b)(2) mandates detention of aliens, like Petitioner, who are present in the United States without having been admitted. ....21

A. The plain language of §1225(b)(2) mandates detention of applicants for admission. ....21

B. The district court's decision disregards the clear text of §1225(b)(2)(A). .... 23

1. Section 1225(b)(2)'s reference to aliens "seeking admission" does not otherwise limit the statute to aliens actively attempting to gain admission. .... 24

2. The statute's headings do not support the district court's interpretation. .... 35

C. Section 1226(c) does not support the district court's reading. .... 38

D. The district court's narrow interpretation subverts congressional intent. .... 42

E. The Supreme Court's decision in Jennings does not undermine the government's interpretation. .... 44

CONCLUSION .... 46

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### Cases

*Altamirano Ramos v. Lyons*,
– F. Supp. 3d –, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) .................. 22

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) .......................................................................... 30

*Att'y Gen. of United States v. Wynn*,
104 F.4th 348 (D.C. Cir. 2024) ........................................................ 25

*Barton v. Barr*,
590 U.S. 222 (2020) ............................................... 2, 10, 32, *passim*

*Cabanas v. Bondi*,
2025 WL 3171331 (S.D. Tex. Nov. 13, 2025) .......................................... 23

*Candido v. Bondi*,
2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025) ...................................... 22, 23

*Bhd. Of R.R. Trainmen v. Baltimore & Ohio R. Co.*,
331 U.S. 519 (1947) ....................................................... 3, 19, 35, 36

*Dep't of Homeland Sec. v. Thuraissigiam*,
591 U.S. 103 (2020) ........................................................ 5, 9, 33, 34

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ............................................................................ 31

*Heyman v. Cooper*,
31 F.4th 1315 (11th Cir. 2022) ........................................................ 33

*Hing Sum v. Holder*,
602 F.3d 1092 (9th Cir. 2010) ................................................... 5, 6, 7

*Hose v. I.N.S.*,
180 F.3d 992 (9th Cir. 1999) ............................................................ 5

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .......................................... 10, 11, 13, 20 *passim*

*Kaplan v. Tod*,
267 U.S. 228 (1925) .......................................... 44

*King v. Burwell*,
576 U.S. 473 (2015) .......................................... 42

*Kleber v. CareFusion Corp.*,
914 F.3d 480 (7th Cir. 2019) .......................................... 25

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) .......................................... 22

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) .......................................... 21

*Lugo v. Hudson*,
785 F.3d 852, 854 (2d Cir. 2015) .......................................... 20

*Martinez v. Att'y General of U.S.*,
693 F.3d 408 (2012) .......................................... 6

*Mejia Olalde v. Noem*,
2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) .......................................... 22, 27, 29, *passim*

*Microsoft Corp. v. I4I Ltd. P'ship*,
564 U.S. 91 (2011) .......................................... 41

*Montoya v. Holt*,
2025 WL 3733302 (W.D. Okla. Dec. 26, 2025) .......................................... 23, 24, 25, *passim*

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) .......................................... 45

*New York State Dep't of Soc. Servs. v. Dublino*,
413 U.S. 405 (1973) .......................................... 42

*Nielsen v. Preap*,
586 U.S. 392 (2019) .......................................... 12

*Ortega-Cervantes v. Gonzalez*,
501 F.3d 1111 (9th Cir. 2007) ..........12

*Pereira v. Sessions*,
585 U.S. 198 (2018)..........30

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012)..........38

*Riley v. Bondi*,
606 U.S. 259 (2025) ..........31

*Rimini St., Inc. v. Oracle USA, Inc.*,
586 U.S. 334 (2019) .......... 32, 33

*Rojas, v. Olson*,
2025 WL 3033967 (E.D. Wis. Oct. 30, 2025).......... 22, 27, 30, *passim*

*Sandoval v. Acuna*,
2025 WL 3048926 (W.D. La. Oct. 31, 2025) .......... 23

*Santos-Zacaria v. Garland*,
598 U.S. 411, 420–22 (2023) ..........31

*Shaughnessy v. United States ex rel. Mezei*,
345 U.S. 206 (1953)..........44

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015).......... 25

*Topal v. Bond*i,
2025 WL 3486894, at *1–2 (W.D. La. Dec. 3, 2025) .......... 23

*Torres v. Barr*,
976 F.3d 918 (9th Cir. 2020).......... 7

*Trs. of Sheet Metal Workers Loc. 7 Zone 1 Pension Fund v. Pro Servs., Inc.*,
65 F.4th 841 (6th Cir. 2023) .......... 35

*United States v. Bronstein*,
849 F.3d 1101 (D.C. Cir. 2017) ........................................................... 33

*Villarreal v. R.J. Reynolds Tobacco Co.*,
839 F.3d 958 (11th Cir. 2016) ............................................................ 25

*Xiaoquan Chen v. Almodovar*,
2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) ........................................... 23

*Yamataya v. Fisher*,
189 U.S. 86 (1903) ................................................................................ 44

*Yinxiao Chen v. Almodovar*,
25-CV09670, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026). ........................ 22

**Administrative Decisions**

*Matter of Lemus-Losa*,
25 I & N. Dec. 734 (BIA 2012) ............................................................ 26

*Matter of Yajure Hurtado*,
29 I. & N. Dec. 216 (BIA 2025) ................................................ 5, 6, 8, 13

**STATUTES**

**Immigration and Nationality Act of 1952, as amended:**

Section 101(a)(13),
8 U.S.C. §1101(a)(13) (1994) ................................................................ 5

Section 101(a)(13)(A),
8 U.S.C. §1101(a)(13)(A) ............................................................... 7, 21

Section 101(a)(13)(C),
8 U.S.C. §1101(a)(13)(C) ..................................................................... 30

8 U.S.C. §1127 ............................................................................................ 14

Section 212,
8 U.S.C. §1182 ........................................................................................12

Section 212(a)(6)(A),
8 U.S.C. §1182(a)(6)(A) ..................................................................... 13, 40

Section 212(a)(6)(A)(i)(I),
8 U.S.C. §1182(a)(6)(A)(i)(I) ......................................................................15

Section 212(a)(6)(C)(i),
8 U.S.C. §1182(a)(6)(C)(i) ..........................................................................41

Section 212(a)(9)(B)(i)(I),
8 U.S.C. §1182(a)(9)(B)(i)(I) ...................................................................... 26

Section 212(a)(9)(B)(i)(II),
8 U.S.C. §1182(a)(9)(B)(i)(II)...................................................................... 26

Section 212(b)(5),
8 U.S.C. §1182(b)(5) ...................................................................................40

Section 212(d)(5),
8 U.S.C. §1182(d)(5) ..................................................................................... 4

Section 212(d)(5)(A),
8 U.S.C. §1182(d)(5)(A) ..............................................................................11

Section 235,
8 U.S.C. §1225..................................................................................1, *passim*

Section 235(a),
8 U.S.C. §1225(a) (1994)................................................................................ 4

Section 235(a),
8 U.S.C. §1225(a) ........................................................................................ 23

Section 235(a)(1),
8 U.S.C. §1225(a)(1)...............................................................................1, 8, 18

Section 235(a)(3),
8 U.S.C. §1225(a)(3) ....................................................................18, 25, 37

Section 235(a)(4),
8 U.S.C. §1225(a)(4) ..........................................................................28, 34

Section 235(b)(1)(A)(i),
8 U.S.C. §1225(b)(1)(A)(i) .................................................... 8, 9, 32, *passim*

Section 235(b)(2),
8 U.S.C. §1225(b)(2) ............................................................................4, 16

Section 235(b)(2)(A),
8 U.S.C. §1225(b)(2)(A).................................................... 16, 22, 23, 24, 34

Section 235(b)(2)(B)(i),
8 U.S.C. §1225(b)(2)(B)(i) ................................................................... 37

Section 235(b)(2)(B)(ii),
8 U.S.C. §1225(b)(2)(B)(ii) ........................................................... 36, 37

Section 235(B)(iii)(IV),
8 U.S.C. §1225(B)(iii)(IV)........................................................................ 9

Section 236(a),
8 U.S.C. §1226 (1995) ............................................................................... 6

Section 236(a),
8 U.S.C. §1226(a) ........................................................11, 12, 13, 14 *passim*

Section 236(a)(1),
8 U.S.C. §1226(a)(1).....................................................................................12

Section 236(a)(2),
8 U.S.C. §1226(a)(2) ...................................................................................12

Section 236(c),
8 U.S.C. §1226(c) ........................................................... 3, 12, 19, *passim*

Section 236(c)(1),
8 U.S.C. §1226(c)(1) .......... 12, 39, 40

Section 236(c)(1)(A),
8 U.S.C. §1226(c)(1)(A) .......... 39, 40

Section 236(c)(1)(B),
8 U.S.C. §1226(c)(1)(B) .......... 39

Section 236(c)(1)(C),
8 U.S.C. §1226(c)(1)(C) .......... 39

Section 236(c)(1)(D),
8 U.S.C. §1226(c)(1)(D) .......... 39

Section 236(c)(1)(E),
8 U.S.C. §1226(c)(1)(E) .......... 13

Section 236(c)(1)(E)(ii),
8 U.S.C. §1226(c)(1)(E)(ii) .......... 42

Section 236(c)(4),
8 U.S.C. §1226(c)(4) .......... 40

Section 236(c)(1)(E)(i),
8 U.S.C. §1226(c)(E)(i) .......... 40

Section 236(c)(1)(E)(ii),
8 U.S.C. §1226(c)(E)(ii) .......... 37

Section 237(a),
8 U.S.C. §1227(a) .......... 39, 45

Section 240,
8 U.S.C. §1229a .......... 15, 23

Section 240(c)(2)(A),
8 U.S.C. §1229a(c)(2)(A) .......... 34

Section 240(c)(4),
8 U.S.C. §1229a(c)(4) .......................................................................... 34

Section 242(a)(1),
8 U.S.C. §1252(a)(1) (1994) ............................................................ 6

Section 242(b)(2)(A),
8 U.S.C. §1252(b)(2)(A).......................................................................31

## Other Statutes

28 U.S.C. §1291 ........................................................................................ 4

28 U.S.C. §1331 ........................................................................................ 4

28 U.S.C. §2241 ................................................................................. 4, 20

28 U.S.C. §2253(a)................................................................................... 4

## Regulations

8 C.F.R. §235.3(b)(1)(ii) ..................................................................... 10

8 C.F.R. §235.3(b)(2)(iii)......................................................................... 9

8 C.F.R. §235.3(b)(4)(ii)........................................................................... 9

8 C.F.R. §236.1(c)(8) ...............................................................................12

8 C.F.R. §236.1(d)(1) ...............................................................................12

8 C.F.R. §1003.19.....................................................................................12

8 C.F.R. §1236.1(d)(1)..............................................................................12

## Other Authorities

American Heritage Dictionary of the English Language 63 (1980) ....... 27,34

H.R. Rep. No. 104-469 (1996)................................................................... 6

Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). .........1, *passim*

Laken Riley Act, Pub. L. No. 119-1, §2, 139 Stat. 3 (2025)... 13, 19, 40 *passim*

Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, *Detention of Applicants for Admission* (July 10, 2025), https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf ..................................................... 14

Webster's Third New International Dictionary 1598 (1971)........................ 25

Webster's New World College Dictionary 69 (4th ed.)................................ 26

171 Cong. Rec. at H278 (daily ed. Jan. 22, 2025) (Rep. McClintock).......... 42

171 Cong. Rec. at H269 (Rep. Roy) .......................................................... 42

## INTRODUCTION

Before 1996, the federal immigration laws provided bifurcated paths for aliens who had neither authority nor permission to enter, requiring the detention of aliens who presented at a port of entry but allowing aliens who had unlawfully entered and were already present in the United States to obtain release pending deportation proceedings. Congress overhauled the immigration system in 1996 with passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996), which sought to end the preferential treatment of aliens who evade inspection and enter the United States unlawfully.

As relevant here, Congress enacted what is now codified at 8 U.S.C. §1225. That provision "deem[s]" any "alien present in the United States who has not been admitted or who arrives in the United States" to be "an applicant for admission." 8 U.S.C. §1225(a)(1). And it mandates the detention of any "applicant for admission" who cannot show that they are "clearly and beyond a doubt entitled to be admitted." *Id.* §1225(b)(2)(A). The statute makes no exception for how far into the country the alien traveled or how long the alien managed to evade detection. Unless the Secretary of Homeland Security exercises the narrow and discretionary parole authority, mandatory detention is the rule for aliens who have never been lawfully

admitted. Although the Government has previously operated under a different (and mistaken) understanding of the law, this Court must apply the language of §1225(b)(2)(A) as written.

There is no dispute that Petitioner is an "applicant for admission" under Section 1225(a), and that he has not shown—and cannot show—he is "clearly and beyond a doubt" entitled to be admitted. Petitioner entered the country without inspection, was never "admitted," and thus unambiguously remains an "applicant for admission." Nor does Petitioner dispute that he was never admitted into the United States. Yet despite the clear statutory text, the district court held that Petitioner is entitled to a bond hearing and potential release despite §1225's prohibition. That was error.

The district court's interpretation of §1225(b)(2) cannot be justified out of a need to avoid rendering redundant the term "seeking admission" in §1225(b)(2)(A). There is no surplusage; the statutory text and context show that *each* term has independent meaning. But even if it were otherwise, "redundancies are common in statutory drafting" and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020).

The lower court relied on the statute's title to justify a cramped reading that limits §1225(b)(2) to aliens who are "arriving" at the border. That

reading is flatly contradicted by the statute. Even if §1225's title supported the lower court's ruling (it does not), a statute's title cannot override unambiguous statutory text, as the Supreme Court has consistently admonished. *Bhd. Of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–29 (1947) ("*Trainmen*").

The district court's atextual reading also is not necessary to give effect to the separate detention authority in §1226. On its face, that provision applies to numerous aliens *not* subject to §1225(b)(2)(A), including all *admitted* aliens who are now deportable—such as the more than one million aliens in the United States who were lawfully admitted but then overstayed their visas. For those aliens, §1226 alone applies. The mere fact that §1226(c) may overlap in part with §1225(b)(2)(A) is insufficient to effectively rewrite clear statutory text, especially considering the other significant work done by §1226(c).

Ultimately, the district court's interpretation is not only contrary to the statute's text but is antithetical to congressional intent. It would reimpose the same inequitable framework that IIRIRA was meant to eliminate—requiring the detention of aliens who present at a port of entry but authorizing the release of those aliens who evade inspection and enter the United States in violation of the law. The Court should not endorse such a

counterintuitive outcome, particularly one that is so plainly subversive of congressional intent.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§1331 and 2241. The district court granted Petitioner's petition for writ of habeas corpus on October 20, 2025. *See Barbosa Da Cunha v. Freden*, 6:25-cv-06532, Dkt. No. 20 (W.D.N.Y.) (text order); Appendix (App'x) 45–58 (written decision and order). The Respondent-Appellant timely filed a notice of appeal from the district court's order on December 11, 2025. App'x at 59. This Court has jurisdiction under 28 U.S.C. §§1291 and 2253(a).

## STATEMENT OF THE ISSUE

Whether an applicant for admission is eligible for bond under 8 U.S.C. §1226 when the Immigration and Nationality Act mandates detention under 8 U.S.C. §1225(b)(2) for applicants for admission, with parole under 8 U.S.C. §1182(d)(5) as the exclusive statutory mechanism for release.

## STATEMENT OF THE CASE

### I. Statutory Framework

#### A. The pre-IIRIRA framework gave preferential treatment to aliens who unlawfully entered and were present in the United States.

The Immigration and Nationality Act (INA), as amended, contains a comprehensive framework governing the regulation of aliens, including the

creation of proceedings for the removal of aliens who unlawfully enter the United States or are otherwise removable and requirements for when the Executive is obligated to detain aliens pending removal.

Prior to 1996, the INA treated aliens differently based on whether the alien presented at a port of entry or evaded inspection and entered the United States. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222–24 (BIA 2025) (citing 8 U.S.C. §§1225(a), 1251(a) (1994)); *see Hing Sum v. Holder*, 602 F.3d 1092, 1099–1100 (9th Cir. 2010) (same). "Entry" referred to "any coming of an alien into the United States," 8 U.S.C. §1101(a)(13) (1994), and whether an alien had physically entered the United States (or not) "dictated what type of [immigration] proceeding applied" and whether the alien would be detained pending those proceedings. *Hing Sum*, 602 F.3d at 1099.[2]

At the time, the INA "provided for two types of removal proceedings: deportation hearings and exclusion hearings." *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) (*en banc*). An alien who arrived at a port of entry would be placed in "exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole." *Hurtado*, 29 I.

---

[2] Aliens who arrive at a port of entry have physically "entered" the United States, but under the longstanding "entry fiction" doctrine, "aliens who arrive at ports of entry … are 'treated' for due process purposes as if stopped at the border." *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

& N. Dec. at 223; *see* 8 U.S.C. §§1225(a)–(b) (1995), 1226(a) (1995). In contrast, an alien who evaded inspection and physically entered the United States would be placed in deportation proceedings. *Hurtado*, 29 I. & N. Dec. at 223; *Hing Sum*, 602 F.3d at 1100. Aliens in deportation proceedings, unlike those in exclusion proceedings, "were entitled to request release on bond." *Hurtado*, 29 I. & N. Dec. at 223 (citing 8 U.S.C. §1252(a)(1) (1994)).

Thus, the INA's prior framework distinguishing between aliens based on "entry" had

> the 'unintended and undesirable consequence' of having created a statutory scheme where aliens who entered without inspection 'could take advantage of the greater procedural and substantive rights afforded in deportation proceedings,' *including the right to request release on bond*, while aliens who had 'actually presented themselves to authorities for inspection' … were subject to mandatory custody.

*Hurtado*, 29 I. & N. Dec. at 223 (emphasis added) (quoting *Martinez v. Att'y General of U.S.*, 693 F.3d 408, 413 n.5 (2012)); *see Hing Sum*, 602 F.3d at 1100 (similar); H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("House Rep.") ("illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection").

### B. IIRIRA eliminated the preferential treatment of aliens who unlawfully entered the United States and mandated detention of "applicants for admission."

Congress discarded that prior regime through enactment of IIRIRA, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Among other things, IIRIRA added §1225 to "ensure[] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc).

To that end, IIRIRA replaced the prior focus on physical "entry" and instead made lawful "admission" the touchstone. IIRIRA defined "admission" to mean "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. §1101(a)(13)(A) (emphasis added). In other words, the immigration laws no longer distinguish between aliens based on whether they dutifully presented to an immigration officer or instead managed to evade detection and enter the country without permission. Instead, the "pivotal factor in determining an alien's status" is "whether or not the alien has been *lawfully* admitted." House Rep., *supra*, at 225 (emphasis added); *see Hing Sum*, 602 F.3d at 1100 (similar). IIRIRA also eliminated the exclusion/deportation dichotomy

and consolidated both sets of proceedings into "removal proceedings." *Hurtado*, 29 I. & N. Dec. at 223.

IIRIRA effected these changes through several provisions codified in §1225 of Title 8.

**Section 1225(a):** Section 1225(a) codifies Congress's decision to make lawful "admission," rather than physical entry, the benchmark. That provision states that an alien "present in the United States who has not been admitted or who arrives in the United States … shall be deemed … an applicant for admission":

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. §1225(a)(1). Moreover, "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* §1225(a)(3). The inspection by the immigration officer is designed to determine whether the alien may be lawfully "admitted" to the country or, instead, must be referred to immigration proceedings.

**Section 1225(b):** IIRIRA also provided for expedited removal and non-expedited "Section 240" proceedings and mandated that applicants for admission be detained pending those proceedings. 8 U.S.C. §1225(b)(1)–(2).

Section 1225(b)(1) provides for so-called "expedited removal proceedings," *DHS v. Thuraissigiam*, 591 U.S. 103, 109–13 (2020), which may be applied to a subset of certain aliens—those who (1) are "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. §1225(b)(1)(A)(i)–(iii). As to these aliens, the immigration officer shall "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of persecution." *Id.* §1225(b)(1)(A)(i). In that event, the alien "shall be detained pending a final determination of credible fear of persecution and, if found not to have such fear, until removed." *Id.* §1225(b)(1)(B)(iii)(IV); *see* 8 C.F.R. §235.3(b)(4)(ii). An alien processed for expedited removal who does not indicate an intent to apply for asylum or a fear of persecution or who is

determined not to have a credible fear is likewise detained until removed. 8 U.S.C. §1225(b)(1)(A)(i), (B)(iii)(IV); *see* 8 C.F.R. §235.3(b)(2)(iii).

Section 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by [subsection (b)(1)]." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).[3] It requires that those aliens be detained pending §240 removal proceedings:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title [Section 240].

8 U.S.C. §1225(b)(2)(A) (emphasis added); *see* 8 C.F.R. §235.3(b)(1)(ii) (mirroring §1225(b)(2)'s detention mandate); *Jennings*, 583 U.S. at 302 (holding that §1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin").

While §1225(b)(2) does not allow for aliens to be released on bond, the INA grants DHS discretion to exercise its parole authority to temporarily release an applicant for admission, but "only on a case-by-case basis for

[3] Section 1225(b)(2)(A) also does not apply to (1) crewmen or (2) stowaways. 8 U.S.C. §1225(b)(2)(B). In addition, the Executive has discretion to return aliens who have arrived on land from a contiguous territory to that territory pending removal proceedings. *Id.* §1225(b)(2)(C).

urgent humanitarian reasons or significant public benefit." 8 U.S.C. §1182(d)(5)(A). Parole, however, "shall not be regarded as an admission of the alien." *Id.*; *Jennings*, 583 U.S. at 288 (discussing parole authority). Moreover, when the Secretary determines that "the purposes of such parole … have been served," the "alien shall … be returned to the custody from which he was paroled" and be "dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. §1182(d)(5)(A).

**Section 1226:** IIRIRA also created a separate authority addressing the arrest, detention, and release of aliens generally (not "applicants for admission" specifically). *See* 8 U.S.C. §1226. This provision governs the detention of aliens who were admitted to the country but later become deportable and are subject to removal proceedings under §1229a—for example, admitted aliens who overstay or otherwise violate the terms of their visas.

The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Detention under this provision is generally discretionary. The arrested alien "may" either "continue to [be] detain[ed] or "may" be released

on bond or conditional parole. *Id.* §1226(a)(1)–(2).[4] DHS makes the initial custody determination. 8 C.F.R. §236.1(d)(1). The alien may seek custody redetermination (a bond hearing) before an immigration judge and can appeal an immigration judge's custody determination to the Board of Immigration Appeals (Board). 8 C.F.R. §§236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

That "default rule" of discretionary detention does not apply to certain criminal aliens. *Jennings*, 583 U.S. at 288; *see* 8 U.S.C. §1226(c). Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain classes of criminal aliens—those who are inadmissible or deportable because the alien (1) "committed" certain offenses delineated in 8 U.S.C. §§1182 and 1227; or (2) engaged in terrorism-related activities. 8 U.S.C. §1226(c)(1); *see Nielsen v. Preap*, 586 U.S. 392, 398–99 (2019). Such aliens may be released only if DHS determines "that release of the alien from custody is necessary" to protect a witness to a "major criminal activity" or a similar person, and then only if the alien "will not pose a danger" to public safety and is not a flight risk. *Id.* §1226(c)(4).

---

[4] Conditional parole under Section 1226(a) is distinct from parole under Section 1182(d)(5)(A). *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749 (BIA 2023); *see Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1116 (9th Cir. 2007).

Congress recently amended §1226(c) through the Laken Riley Act, Pub. L. No. 119-1, §2, 139 Stat. 3 (2025), which additionally requires detention of aliens who (1) are inadmissible because they are physically present in the United States without admission or parole (8 U.S.C. §1182(a)(6)(A)), have committed a material misrepresentation or fraud, (*id.* §1182(a)(6)(C)), or lack required documentation, (*id.* §1182(a)(7)); and (2) are "charged with, [] arrested for, [] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of" certain listed offenses. *Id.* §1226(c)(1)(E).

### C. The plain language of §1225(b)(2)(A) requires detention of all applicants for admission.

For many years after IIRIRA, DHS and most immigration judges treated aliens who entered the United States without admission as being subject to discretionary detention under 8 U.S.C. §1226(a), rather than mandatory detention under 8 U.S.C. §1225(b)(2). *Hurtado*, 29 I. & N. Dec. at 225 n.6. Until this year, however, the Board of Immigration Appeals had not issued any precedential opinion on the appropriate detention authority for such individuals.

On July 8, 2025, U.S. Customs and Immigrant Enforcement issued interim guidance reflecting that DHS "revisited its legal position on detention and release authorities" and brought the Executive's practices in

line with the statute's plain text. *See, e.g.*, Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, *Detention of Applicants for Admission* (July 10, 2025).[5] Specifically, DHS concluded that "applicants for admission are subject to mandatory detention under INA §235(b) [, 8 U.S.C. §1225(b),] and may not be released from DHS custody except by INA §212(d)(5) parole." *Id.* As a result, the "only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under the INA §236(a) [, 8 U.S.C. §1226(a),] are aliens admitted to the United States and chargeable with deportability under INA §237 [, 8 U.S.C. §1127]." *Id.*

The Board recently held as much in *Hurtado*. The Board concluded that §1225(b)(2)'s mandatory detention regime applies to *all* aliens who entered the United States without inspection and admission:

> Aliens … who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United State for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission."

29 I. & N. Dec. at 228. Thus, under Board precedent, immigration judges "lack authority to hear bond requests or to grant bond to aliens … who are present in the United States without admission." *Id.* at 225.

---

5 https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf.

## II. Factual Background and Procedural History

### A. Petitioner entered the United States without admission and was detained for removal proceedings.

Petitioner Ricardo Aparecido Barbosa Da Cunha is a native and citizen of Brazil who entered the United States without inspection in or around 2005 and has remained in the country since that entry. App'x at 37–39, 41–44; *see* App'x at 16, ¶ 20. On September 26, 2025, officers from U.S. Immigration and Customs Enforcement (ICE) encountered Petitioner during a traffic stop in Saugus, Massachusetts, and determined that he had entered the United States without inspection and admission. App'x at 37–39; App'x at 16, ¶ 23. ICE then took Petitioner into custody.

DHS thereafter initiated removal proceedings against Petitioner under 8 U.S.C. §1229a and charged him with inadmissibility under both 8 U.S.C. §1182(a)(6)(A)(i)(I), as an alien who is present in the United States without having been admitted or paroled, and §1182(a)(7)(A)(i)(I), as an applicant for admission who did not possess the proper entry documents. App'x at 41–44. In a bid for release from detention, Petitioner requested a custody redetermination hearing with an immigration judge. App'x at 14, ¶ 15. The immigration judge subsequently denied Petitioner's bond request, concluding that Petitioner is subject to mandatory detention under 8 U.S.C.

§1225(b)(2)(A), which deprived the immigration judge of jurisdiction to grant custody redetermination. *Id.*; App'x at 14, ¶ 15.

### B. The district court granted the habeas petition and ordered DHS to provide Petitioner a bond hearing.

On September 26, 2025, Petitioner filed a petition for writ of habeas corpus in the District of Massachusetts challenging his detention and seeking release. App'x at 1–4. However, because DHS transported Petitioner to the Buffalo Federal Detention Facility in Buffalo, New York, prior to the filing of the petition, the case was transferred to the Western District of New York upon the stipulation of the parties. App'x at 22–34; *Barbosa Da Cunha*, 6:25-cv-06532, Dkt. No. 11. Petitioner subsequently filed an amended petition in which he alleged that his detention under §1225(b)(2)(A) violates the INA, agency regulations, and the Fifth Amendment's due process clause. App'x at 11–20. He sought immediate release or a bond hearing in the alternative. App'x at 18–20, ¶¶ 31–43.

The district court granted the petition in a text order issued on October 20, 2025, which was later memorialized in a written decision on November 25, 2025. App'x at 41–58. The court found that Petitioner's detention is not governed by 8 U.S.C. §1225(b)(2) but by 8 U.S.C. §1226(a), which allows the Government to release an alien on bond or conditional parole during removal proceedings. App'x at 52–57.

In particular, the court held that the phrase "seeking admission" in §1225(b)(2)(A) "involves active efforts to obtain 'admission,'" thus limiting the provision to aliens actively trying to obtain lawful entry *after* inspection by an immigration official. *Id.* 54. The court thought this interpretation necessary to avoid rendering §1225(b)(2)(A) superfluous. *Id.* The court also relied on references to "arriving aliens" and "inspection" in the statute's headings to indicate that the statute governs only aliens entering the country (*i.e.* not those already present without inspection). *Id.* at 55–56. The court further found it significant that the warrant for Petitioner's arrest authorized detention under 8 U.S.C. § 1226(a), which "support[ed] the inference that even the agency originally considered Petitioner to be detained under [Section] 1226." *Id.* at 57.

Based on the foregoing rulings, the district court granted Petitioner's habeas petition, in part and ordered Respondents to either provide Petitioner with a bond hearing within ten days under 8 U.S.C. §1226(a), or to release him. App'x at 58; *Barbosa Da Cunha*, 6:25-cv-06532, Dkt. No. 25 (Text Order Oct. 20, 2025). Because the court provided Petitioner the relief he sought based on its agreement with his statutory interpretation, the court declined to reach Petitioner's due process challenges. App'x at 57. Petitioner was released on bond on October 29, 2025. App'x at 58.

## SUMMARY OF ARGUMENT

The INA's plain language requires DHS to detain aliens, like Petitioner, who are present in the United States without admission. The district court's contrary conclusion flouts the statute's text and subverts congressional intent. The Court should reverse.

**I.** Section 1225 of Title 8 deems all aliens who are "present in the United States" without admission to be "applicants for admission," and it mandates that all such applicants for admission—except for those otherwise exempted—"shall be detained" during their removal proceedings. 8 U.S.C. §1225(a)(1), (b)(2)(A). Detention is mandatory, regardless of the duration of the alien's presence in the United States, the alien's distance from the border when apprehended, or the affirmative acts he takes to secure lawful admission.

**II.** The phrase "seeking admission" in §1225(b)(2) does not undermine the Government's reading. The statute makes clear that an alien who is an "applicant for admission" is necessarily "seeking admission." *See* 8 U.S.C. §1225(a)(3). No additional, affirmative act is needed. That is consistent with the everyday meaning of the terms—as a matter of plain English, a person who is *applying* for something is necessarily *seeking* it. This reading does not render the term "seeking admission" redundant; every term or phrase

has independent meaning. Even if there were redundancy, "[r]edundancies are common in statutory drafting," and "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 223.

Nor do the statute's titles and headings limit §1225(b)(2)(A)'s detention mandate to aliens arriving in the country. A statute's title, however, "cannot limit the plain meaning of the text." *Trainmen*, 331 U.S. at 528–29. Moreover, especially where a statute, like §1225, covers a range of subjects, its headings are not meant as a comprehensive summary of its content.

**III.** The Government's reading of §1225(b)(2) does not render §1226(c) superfluous. Section 1226(c)'s mandatory detention provisions, including as amended by the Laken Riley Act, govern a significant swath of aliens who are *not* covered by §1225(b)(2)—for example, admitted aliens who overstayed visas and are deportable. The mere fact that the provisions overlap is not a basis for rewriting §1225(b)(2)'s clear text. Even as to the areas of overlap, §1226(c) does considerable independent work by prohibiting release on parole of those aliens to which it applies.

**IV.** To make matters worse, the district court's interpretation would reimpose the same illogical regime that IIRIRA sought to eliminate—

requiring the detention of aliens who present at a port of entry as the law requires, but authorizing the release of those aliens who enter the United States in violation of law and make *no effort* to prove admissibility. The Court should not endorse such a nonsensical reading of the statute, rewarding those who purposefully evade and flout our immigration laws and authorities, particularly where the consequence of Petitioner's interpretation, as endorsed by the district court, so clearly subverts congressional intent.

**V.** The Government's interpretation of §1225(b)(2) is consistent with *Jennings*, 583 U.S. 281. That case did not address the scope of §s 1225 and 1226's detention authority. Even so, *Jennings* characterized §1225(b)(2) consistent with the Government's interpretation as "a catchall provision that applies to all applicants for admission not covered by §1225(b)(1)." *Id.* at 287.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant or denial of a petition for a writ of habeas corpus under 28 U.S.C. §2241. *See, e.g.*, *Lugo v. Hudson,* 785 F.3d 852, 854 (2d Cir. 2015).

## ARGUMENT

### I. Section 1225(b)(2) mandates detention of aliens, like Petitioner, who are present in the United States without having been admitted.

Under the plain language of §1225(b)(2), DHS is required to detain all aliens, like Petitioner, who are present in the United States without admission and are subject to removal proceedings—regardless of how long the alien has been in the United States or how far inland from the border they managed to migrate before being detained. That unambiguous language resolves this case. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020) ("Our analysis begins and ends with the text."). The district court's contrary interpretation is incompatible with the statutory text and subverts Congress's manifest purposes in adopting §1225(b)(2)(A). *See* App'x at 52–57.

#### A. The plain language of §1225(b)(2) mandates detention of applicants for admission.

Section 1225(a) deems all aliens who are "present in the United States [and] ha[ve] not been admitted or who arrive[] in the United States" to be "applicant[s] for admission." 8 U.S.C. §1225(a)(1). And "admission" under the INA means not mere physical entry, but "lawful entry … after inspection" by immigration authorities. 8 U.S.C. §1101(a)(13)(A). Thus, an alien who enters the country without inspection and admission is and remains an

applicant for admission, regardless of the duration of the alien's presence in the United States or the alien's distance from the border. *See Candido v. Bondi*, 25-CV-867, 2025 WL 3484932, at *1–4 (W.D.N.Y. Dec. 4, 2025); *Yinxiao Chen v. Almodovar*, 25-CV09670, 2026 WL 100761, at *6–13 (S.D.N.Y. Jan. 14, 2026).

In turn, §1225(b)(2) provides that "an alien who is an applicant for admission … shall be detained" pending removal proceedings if the "alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). The statute's use of the term "shall" denotes that detention is mandatory. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *see Jennings*, 583 U.S. at 302 (holding that §1225(b)(2) "mandate[s] detention"). And like subsection (a), subsection (b)(2) makes no exception for either the alien's duration of presence in the country or the distance of his incursion.

Therefore, except for those aliens expressly exempted, the statute's plain text mandates that DHS detain all "applicants for admission" who are not "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A). *See Altamirano Ramos v. Lyons*, – F. Supp. 3d –, 2025 WL 3199872, at *4–8 (C.D. Cal. Nov. 12, 2025); *Mejia Olalde v. Noem*, 2025 WL 3131942, at *2–3 (E.D. Mo. Nov. 10, 2025); *Rojas v. Olson*, 2025 WL

3033967, at *6 (E.D. Wis. Oct. 30, 2025); *Cabanas v. Bondi*, 2025 WL 3171331, at *4–6 (S.D. Tex. Nov. 13, 2025); *Sandoval v. Acuna*, 2025 WL 3048926, at *3–6 (W.D. La. Oct. 31, 2025); *Topal v. Bond*i, 2025 WL 3486894, at *1–2 (W.D. La. Dec. 3, 2025); *Xiaoquan Chen v. Almodovar*, 2025 WL 3484855, at *3–8 (S.D.N.Y. Dec. 4, 2025); *Candido*, 2025 WL 3484932, at *1–5; *Montoya v. Holt*, 2025 WL 3733302, at *6–12 (W.D. Okla. Dec. 26, 2025).

Petitioner falls squarely within the statute's definition. He was "present in the United States," there is no dispute that he has "not been admitted," and he does not fall within any of the exceptions to §1225(b)(2)(A). 8 U.S.C. §1225(a), (b)(2)(B); *supra*, p. 15. Moreover, he did not—and cannot—establish that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A); supra, pp. 14–15. Therefore, the statute commands that Petitioner "shall be detained for a proceeding under [8 U.S.C. §1229a]." 8 U.S.C. §1225(b)(2)(A).

### B. The district court's decision disregards the clear text of §1225(b)(2)(A).

Despite the clear language of §1225, the district court found that Petitioner's detention is governed by §1226(a) because §1225(b)(2) applies only to aliens who making "active efforts" to gain admission to the United States. App'x at 52–57. That reading directly contradicts the statute. Nor is

there any other interpretation of §1225(b)(2)(A) that would exclude aliens, like Petitioner, who evaded inspection and are now unlawfully present in the United States.

### 1. Section 1225(b)(2)'s reference to aliens "seeking admission" does not otherwise limit the statute to aliens actively attempting to gain admission.

The district court held that the phrase "seeking admission" in §1225(b)(2)(A) requires that the provision be read to apply only to applicants for admission who are making "active efforts" to obtain admission—not aliens, like Petitioner, who was residing unlawfully in the United States *without* making any effort to gain admission. App'x at 54–57. That is wrong. The statute itself makes clear that an alien who is an "applicant for admission" *is* "seeking admission."

**a.** Section 1225(b)(2) requires the detention of an "applicant for admission, if the examining officer determines that [the] alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §1225(b)(2)(A) (emphasis added). The statutory text and context show that being an "applicant for admission" is a means of "seeking admission." In other words, every "applicant for admission" is inherently and necessarily "seeking admission," at least absent a choice to pursue withdrawal. No additional affirmative step is necessary. *See Montoya*, 2025

WL 3733302, at *8–9 ("the statute necessarily treats 'seeking admission' as a condition that attaches to anyone deemed an 'applicant for admission.'").

Section 1225(a) provides that "[a]ll aliens … who are applicants for admission *or otherwise* seeking admission or readmission … shall be inspected." 8 U.S.C. §1225(a)(3) (emphasis added). The word "[o]therwise' means 'in a different way or manner[.]'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015) (quoting Webster's Third New International Dictionary 1598 (1971)); *see also Att'y Gen. of United States v. Wynn*, 104 F.4th 348, 354 (D.C. Cir. 2024) (same). The phrase "or otherwise" thus "operates as a catchall: the specific items that precede it are meant to be subsumed by what comes after the 'or otherwise'" clause. *Kleber v. CareFusion Corp.*, 914 F.3d 480, 483 (7th Cir. 2019); *see Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963–64 (11th Cir. 2016) (en banc) ("or otherwise" means "the first action is a subset of the second action"). Being an "applicant for admission" is thus a particular "way or manner" of seeking admission, such that any alien who is an "applicant for admission" *is* "seeking admission" for purposes of §1225(b)(2)(A). *See Montoya*, 2025 WL 3733302, at *8–9 ("The word 'otherwise' establishes that 'aliens … seeking admission' is the category to which 'applicants for admission' belong.").

"Seeking admission" thus includes not only aliens who "entered the United States with visas or other entry documents before their presence became lawful," but also aliens who "entered unlawfully or [were] paroled into the United States but were deemed constructive applicants for admission by operation of §235(a)(1) of the Act." *Matter of Lemus-Losa*, 25 I & N. Dec. 734, 743 n.6 (BIA 2012) (emphases omitted). As a result, "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Id.* at 743 (emphasis in original). For example, an alien who previously unlawfully entered the United States and is never admitted, departs, and subsequently submits a literal application for admission to the United States—*e.g.*, applies for a visa—is deemed to be "*again* seek[ing] admission" to the United States. *Id.* at 743–44 & n.6 (emphasis added) (quoting and discussing 8 U.S.C. §1182(a)(9)(B)(i)(I)–(II)). Mere presence without admission *is* seeking admission "by operation of law." *Id.*

The everyday meaning of the statutory terms also supports this reading. One may "seek" something without "applying" for it—for example, one who is "seeking" happiness is not "applying" for it. But one *applying* for something is necessarily *seeking* it. *Compare* Webster's New World College

Dictionary 69 (4th ed.) ("apply" means "To make a formal request (*to* someone *for* something)"), *with id.* at 1299 ("seek" means "to request, ask for"); *accord Mejia Olalde*, 2025 WL 3131942, at *3 ("To 'seek' is a synonym of to 'apply' for."). For example, a person who is "applying" for admission to a college or club is "seeking" admission to the college or club. *See* The American Heritage Dictionary of the English Language 63 (1980) ("American Heritage Dictionary") ("apply" means "[t]o request or *seek* employment, acceptance, or *admission*") (emphasis added). Likewise, an alien who is "applying" for admission to the United States (*i.e.*, an "applicant for admission") is necessarily "seeking admission" to the United States. *See Montoya*, 2025 WL 3733302, at *8, 10 ("What individual is 'applying' for a given legal status without 'seeking' such status?"); *accord Rojas*, 2025 WL 3033967, at *8 ("seeking admission" is "best read as simply another way of referring to aliens who are applicants for admission").

The district court acknowledged the "otherwise" clause but only in part. It acknowledged that the clause means that "an alien may be 'seeking admission,' but may do so 'under other circumstances' or 'in another manner' than as an applicant for admission," App'x [Dec. at 11]—*i.e.*, that an alien may seek admission without being an applicant for admission. But it failed to recognize the flipside—that an alien applying for admission is necessarily

seeking it. *Montoya*, 2025 WL 3733302, at *9 ("§1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be 'seeking admission.' But it does *not* leave open the possibility that some 'applicants for admission' are not 'seeking admission.'").

Section 1225(a)(4) reinforces this point. That provision states that "[a]n alien applying for admission may … be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. §1225(a)(4). "A plain language reading of the phrase '*applicant* for admission' alongside the phrase '*application* for admission' lends the inference that the 'application' to be 'withdrawn[]' is that of the 'applicant for admission.'" *Montoya*, 2025 WL 3733302, at *10. That makes sense given that status as an "applicant for admission" turns on whether the alien "arrives" or is "present *in the United States*," 8 U.S.C. §1225(a)(1) (emphasis added); "depart[ing] … from the United States" would necessarily "withdraw" status as an "applicant for admission." *Id*. §1225(a)(4). And that "in turn lends the straightforward inference that 'applicants for admission' [are] apply[ing] for admission until taking the actions prescribed by §1225(a)(4). *Montoya*, 2025 WL 3733302, at *10. And as noted, one who is "applying" for something is necessarily "seeking" it. *Id*. ("What individual is 'applying' for a given legal status without 'seeking' such a status?").

All of this confirms that neither the duration of an alien's unlawful presence in the United States nor his distance from the border when apprehended alters the legal reality that an "applicant for admission" is "seeking admission." "Congress knows how to limit the scope" of the INA "geographically and temporally when it wants to." *Mejia Olalde*, 2025 WL 3131942, at *4. For example, §1225(b)(1) may apply to certain aliens "arriving in the United States" or who "ha[ve] been physically present in the United States continuously for [a] 2-year period." 8 U.S.C. §1225(b)(1). So, "[i]f Congress meant to say that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so." *Mejia Olalde*, 2025 WL 3131942, at *4. It did not. To the contrary, §1225(a)(1)'s inclusion of *both* aliens "arriving" and those "present in the United States" confirms that *all* aliens who are not admitted are "applicants for admission," regardless of the length of their presence in the country.

None of this is to say, however, that "seeking admission" has no meaning beyond "applicant for admission." As §1225(a)(3) shows, being an "applicant for admission" is only *one* "way or manner" of "seeking admission," *supra*, pp. 26–27—not the exclusive way. *See Montoya*, 2025 WL 3733302, at *9 ("§1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be 'seeking

admission.'"). For example, lawful permanent residents returning to the United States are not "applicants for admission" but they still may be deemed to be "seeking admission" in some circumstances. *See* 8 U.S.C. §1101(a)(13)(C). Stowaways, too, are not "applicants for admission" but are still subject to inspection for admissibility. *See* 8 U.S.C. §§1182(a)(6)(D), 1225(a)(2). And given the complexity of the statutory scheme and IIRIRA's amendments, Congress's use of the phrase "or otherwise seeking admission" ensured that all aliens would be subject to §1225(a)'s requirement—including aliens who entered before IIRIRA's effective date.

Despite the clear statutory language, the district court relied on the Government's preliminary invocation of §1226(a) as a basis for Petitioner's arrest to conclude that Petitioner must be subject to §1226(a)'s discretionary detention regime. App'x at 52–57. But past practice does not justify disregard of clear statutory language. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015); *see Mejia Olalde*, 2025 WL 3131942, at *5 (rejecting the prior interpretation of §1225(b)(2) as "nontextual" and unsupported by any "thorough, reasoned analysis"); *Rojas*, 2025 WL 3033967, at *9 ("Prior administrations' generous interpretation of these laws ... do not and cannot rewrite it."). Indeed, the Supreme Court has rejected longstanding government interpretations that it has deemed incompatible with the INA

specifically. *See, e.g.*, *Riley v. Bondi*, 606 U.S. 259, 273–76 (2025); *Santos-Zacaria v. Garland*, 598 U.S. 411, 420–22 (2023); *Pereira v. Sessions*, 585 U.S. 198, 204–05, 208–09 (2018). Therefore, the lower court was required to interpret the statute "as written." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

At a minimum, §1225(a)(3) is treating what comes after the "otherwise" clause as "simply another way of referring to aliens who are applicants for admission." *Rojas*, 2025 WL 3033967, at *8; *see also Mejia Olalde*, 2025 WL 3131942, at *3. Even if that produces some redundancy in §1225(a)(3) and (b)(2)(A), the canon against surplusage "is not a silver bullet," *Remini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019), because Congress often "employ[s] a belt-and-suspenders approach," *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020)—here, to ensure the broadest possible application of the inspection requirement.

**b.** The Government's reading does not render the term "seeking admission" redundant of the phrase "applicant for admission" in §1252(b)(2)(A); the structure of §1252(b)(2)(A) demonstrates that each phrase has independent meaning.

Section 1225(b)(2)(A) is composed of a primary (operative) clause, which is modified by two prefatory clauses offset by commas. The operative

clause requires detention of aliens "seeking admission" who cannot show their admissibility ("if the examining immigration officer …, [then] the alien shall be detained"). That clause's mandate is modified by two prefatory clauses. The first excludes aliens covered by subparagraphs (B) and (C). 8 U.S.C. §1225(b)(2)(A) ("[s]ubject to …"). Like the first, the second prefatory clause narrows the operative clause to a subset of "case[s]"—namely, "in the case of an alien who is an applicant for admission…." *Id.* (emphasis added). Section 1225(b)(2) thus lays out a general command (the operative clause), and then qualifies that directive: "[I]f an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," then "the alien shall be detained"—but only if (1) the alien is not covered by subparagraphs (B) or (C); and (2) the alien is seeking admission by being "an applicant for admission" under §1225(a)(1). No portion of the statute is redundant.

Even if it were otherwise, "[r]edundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton*, 590 U.S. at 239. Thus, "[t]he Court has often recognized: Sometimes the better overall reading of a statute contains some redundancy." *Id.* (quoting *Rimini St., Inc.*, 586 U.S. at 346) (internal quotations omitted). For that reason, "the

surplusage canon … must be applied with statutory context in mind," *United States v. Bronstein*, 849 F.3d 1101, 1110 (D.C. Cir. 2017), and "redundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text," *Barton*, 590 U.S. at 239.

Those principles apply with full force here. Under a straightforward reading of the statute, being an "applicant for admission" is "seeking admission." Even if that reading produced some redundancy in §1225(b)(2)(A), that is "not a license to rewrite" §1225 "contrary to its text." *Barton*, 590 U.S. at 239; *see Heyman v. Cooper*, 31 F.4th 1315, 1322 (11th Cir. 2022) ("Th[e] principle [that drafters do repeat themselves] carries extra weight where … the arguably redundant words that the drafters employed … are functional synonyms."). And that is especially true, where that re-writing would be so clearly contrary to Congress's objective in passing the law. *Infra*, pp. 40–42.

**c.** Even if "seeking admission" required some separate affirmative conduct by the alien, an applicant for admission who attempts to remain in the United States is, by any definition, "seeking admission." Petitioner fits squarely within this category.

Section 1225(b)(2)(A) applies to an alien who is present in the United States without admission, even for years. Although the alien may not have

been affirmatively seeking admission during those years of illegal presence, §1225(b)(2) is not concerned with the alien's pre-inspection conduct. Rather, the statute's use of present-tense language ("seeking" and "determines") shows that its focus is a specific point in time—when "the examining immigration officer" is making a "determin[ation]" regarding the alien's admissibility. 8 U.S.C. §1225(b)(2)(A). At that point, the alien is "seeking"—i.e., presently "endeavor[ing] to obtain," American Heritage Dictionary, *supra*, at 1174—admission into the United States; if it were otherwise, the applicant would attempt to voluntarily "depart immediately from the United States" in lieu of removal proceedings. *See* 8 U.S.C. §1225(a)(4). An applicant who forgoes that statutory option and instead endeavors to remain in the United States during the removal proceedings—proceedings in which the alien has the "burden of establishing that [he] is clearly and beyond a doubt entitled to be admitted" or satisfies the criteria for "relief from removal," 8 U.S.C. §1229a(c)(2)(A), (c)(4)—is "endeavor[ing] to obtain" admission to the United States. American Heritage Dictionary, *supra*, at 1174.2.

### 2. The statute's headings do not support the district court's interpretation.

The district court determined that the references to "arriving aliens" and "inspection" in the title and subheadings in §1225 support limiting §1225(b)(2)(A) to aliens who are arriving at the border, *not* those already

physically present in the country. App'x at 55–56. The Court should reject any such interpretation. *See Montoya*, 2025 WL 3733302, at *6–7 (rejecting similar argument).

The reference to "arriving aliens" in §1225's title—"expedited removal of inadmissible arriving aliens"—cannot limit the statute to aliens entering the United States. App'x at 55–56. After all, a statute's title is "of use only when [it] shed[s] light on some ambiguous word or phrase"; "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Trainmen*, 331 U.S. at 528–29 (titles "cannot undo or limit that which the text makes plain"); *see Trs. of Sheet Metal Workers Loc. 7 Zone 1 Pension Fund v. Pro Servs., Inc.*, 65 F.4th 841, 848 (6th Cir. 2023) (same).

Here, §1225's text makes crystal clear that it applies to aliens who are already physically present in the United States, not just to those who are arriving. Section 1225(a)(1) explicitly deems aliens already "present in the United States who have not been admitted" to be applicants for admission. 8 U.S.C. §1225(a)(1); *Rojas*, 2025 WL 3033967, at *6, *8; *Montoya*, 2025 WL 3733302, at *6. And nothing in §1225(b)(2)(A) refers to "arriving aliens." Likewise, §1225(b)(1) expedited removal procedures may be applied not just to aliens "arriving in" the United States, but also to aliens who have been "physically present in the United States" for up to two years. 8 U.S.C.

§1225(b)(1)(A)(i), (iii)(II). The statute's title "cannot undo or limit that which the text makes plain." *Trainmen*, 331 U.S. at 529.

Section 1225's title is an especially weak indicator of the statute's scope. "Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a general manner," and often "neglect to reveal that [the statute] also deals with" a variety of other subjects. *Trainmen*, 331 U.S. at 528 ("That the heading of s 17 fails to refer to all matters which the framers of that section wrote into the text is not an unusual fact."). Here, §1225 covers a multitude of subjects and classes of aliens, including arriving aliens; that the statute's title singles out arriving aliens specifically "cannot limit the plain meaning of the text." *Id*. Even if it could, the title refers to "arriving aliens" in a clause addressing "*expedited removal* of inadmissible … aliens," and expedited removal is governed by subsection (b)(1), not subsection (b)(2). *See* 8 U.S.C. §1225(b)(2)(B)(ii). If §1225's title had a limiting effect—and it does not—it would not extend to subsection (b)(2). *See Mejia Olalde*, 2025 WL 3131942, at *3 (same); *Montoya*, 2025 WL 3733302, at *6 (same).

Likewise, the word "inspection" in the heading of §1225(b)(2) does not narrow the §1225's scope to aliens arriving in the United States. Section 1225 provides that "all aliens … *who are applicants for admission* or otherwise

seeking admission or readmission … *shall be inspected* by immigration officers." 8 U.S.C. §1225(a)(3) (emphasis added). Inspection is required for all aliens "present in the United States who have not been admitted," not just aliens arriving in the United States. *Id.* §1225(a)(1). This point is reinforced by subsection (b)(1), which requires inspection of aliens who "ha[ve] been physically present in the United States" for up to two years, 8 U.S.C. §1225(b)(1)(A)(i), (iii)(II)—encompassing many aliens who are in no sense "arriving."

The preceding discussion all but disposes of any argument that §1225(b)(2)(A)'s reference to "crewm[e]n" and "stowaways" limits the statute to aliens at the border. App'x at 56. Yes, §1225(b)(2)(A) also applies to certain aliens who arrive in the United States, *supra*, pp. 8–9, which is why excluding "crewm[e]n" and "stowaways" from §1225(b)(2)(A) required express exemptions. *See* 8 U.S.C. §1225(b)(2)(B)(i), (iii). But again, the statute "deem[s]" *both* aliens who arrive and aliens already "present in the United States" to be "applicant[s] for admission." *Id.* §1225(a)(1). Congress's decision to exclude certain aliens who arrive in the United States from §1225(b)(2)(A) does not otherwise limit the provision's scope.

### C. Section 1226(c) does not support the district court's reading.

Petitioner is likely to argue, as many district courts have held, that the Government's interpretation would not render superfluous portions of §1226, which contains a separate mandatory detention provision for certain criminal aliens. That, too, is wrong. Although §1226(c) and §1225(b)(2) overlap for some aliens, each provision has independent effect. Mere overlap is no basis for re-writing unambiguous statutory text.

**1.** As a threshold matter, there is no colorable argument that the Government's interpretation of §1225(b)(2)(A) renders §1226(a)'s discretionary detention authority superfluous. Section 1226(a) authorizes the Executive to "arrest[] and detain[]" *any* "alien" pending removal proceedings but provides that the Executive also "may release the alien" on bond or conditional parole. 8 U.S.C. §1226(a). That provision provides the detention authority for the significant group of aliens who are *not* "applicants for admission" subject to §1225(b)(2)(A), *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("the specific governs the general")—that is, aliens who have been admitted to the United States but are now removable. For example, the detention of any of the multitude of aliens who have overstayed their visas is governed by §1226(a), because those aliens (unlike Petitioner) *were* admitted to the United States.

**2**. Likewise, the Government's reading of §1225(b)(2)(A) does not render §1226(c) superfluous. As described above, §1226(c) requires the Executive to detain "any alien" who is deportable or inadmissible for having committed specified offenses or engaged in terrorism-related actions. *See* 8 U.S.C. §1226(c)(1)(A)–(E). Section 1226(c) applies to significant groups of criminal aliens *not* encompassed by §1225(b)(2).

**a.** Most obvious, §1226(c)(1) requires the Executive to detain aliens who *have been admitted* to the United States and are now "deportable." *See* 8 U.S.C. §1226(c)(1)(B). By contrast, §1225(b)(2) has no application to admitted aliens. Next, §1226(c)(1) requires detention of aliens who are "inadmissible" on certain grounds. *See* 8 U.S.C. §1226(c)(1)(A), (D), (E). Here, too, §1226(c) sweeps more broadly than §1225(b)(2), because the referenced grounds cover aliens who are inadmissible but were erroneously admitted. *See* 8 U.S.C. §1227(a), (a)(1)(A) (providing for the removal of "[a]ny alien … in *and admitted to* the United States," including "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens *inadmissible* by the law existing at the time.…" (emphasis added)); *see Montoya*, 2025 WL 3733302, at *11 (concluding that "§1226(c)(1) still operate[s] when an alien is erroneously found admissible").

Moreover, §1226(c) narrows the circumstances under which aliens may be *released* from mandatory detention. Recall that, for aliens subject to mandatory detention under §1225(b)(2), IIRIRA allows the Executive to "temporarily" release them on parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. §1182(b)(5); *supra*, p. 10. Section 1226(c)(1) takes that release option off the table for aliens who have also committed the offenses or engaged in the conduct specified in §1226(c)(1)(A)–(E). As to those aliens, §1226(c) authorizes their release from custody only if "necessary to provide protection to" a witness or a similar person "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. §1226(c)(4).

**b.** The Government's reading also does not render superfluous Congress's recent amendment of §1226(c) through the Laken Riley Act. *Cf.* App. 344-45 R. Doc. 14, at 13–14. That law requires mandatory detention of criminal aliens who are "inadmissible" under 8 U.S.C. §1182(a)(6)(A), (a)(6)(C), or (a)(7). *See* 8 U.S.C. §1226(c)(1)(E)(i)–(ii). Even then, the Laken Riley Act "appl[ies] to situations where §1225 might not." *Mejia Olalde*, 2025 WL 3131942, at *4 (citing 8 U.S.C. §1182(a)(6)(C)(i)).

To be sure, the Laken Riley Act's application to criminal aliens who are inadmissible under §1182(a)(6)(A)—for being "present … without being admitted or paroled"—overlaps with §1225(b)(2)(A). But again, "[r]edundancies are common in statutory drafting," and are "not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 239; *see Mejia Olalde*, 2025 WL 3131942, at *4 ("even assuming there were surplusage, that cannot trump the plain meaning of §1225(b)(2)"). Moreover, the canon against surplusage is "weak" when applied, as here, to "acts of Congress enacted at widely separated times." *Mejia Olalde*, 2025 WL 3131942, at *5; *see Rojas*, 2025 WL 3033967, at *9 ("[L]egislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996"). And it is especially weak where, as here, there will be overlap under *any* possible reading of the statute. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute") (internal quotation omitted). After all, even if §1225(b)(2)(A)'s detention requirement applied only to aliens arriving at the border (and not also those present in the United States), this portion of the Laken Riley Act would apply to those aliens, too, if they met the offense criteria. *See* 8 U.S.C. §1226(c)(1)(E)(ii). Some redundancy is unavoidable.

In any event, §1226(c) still does independent work, despite the overlap, by preventing the Executive from releasing the specified criminal aliens on parole. *Supra*, p. 38–39. In fact, Congress's desire to further limit the parole power with respect to criminal aliens was one reason it enacted the Laken Riley Act. The Act was adopted in the wake of a heinous murder committed by an inadmissible alien who was "paroled into this country through a shocking abuse of that power," 171 Cong. Rec. at H278 (daily ed. Jan. 22, 2025) (Rep. McClintock), and an abdication of the Executive's "fundamental duty under the Constitution to defend its citizens," 171 Cong. Rec. at H269 (Rep. Roy). The Act thus reflects a "congressional effort to be double sure," *Barton*, 590 U.S. at 239, that unadmitted criminal aliens are not released on parole into the country through an abuse of the narrow parole authority.

### D. The district court's narrow interpretation subverts congressional intent.

The district court's reading is not only textually baseless, it also subverts IIRIRA's express goal of eliminating preferential treatment for aliens who enter the country unlawfully. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (rejecting interpretation that would lead to result "that Congress designed the Act to avoid"); *New York State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419–20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

Recall that one of IIRIRA's express objectives was to dispense with the perverse pre-1996 regime under which aliens who entered the United States unlawfully were given "equities and privileges in immigration proceedings that [were] not available to aliens who present[ed] themselves for inspection" at the border, including the right to secure release on bond. House Rep., *supra*, at 225; *supra*, pp. 6–7. The lower court's interpretation would restore the regime Congress sought to discard: It would require detention for those who present themselves for inspection at a port of entry in compliance with law, yet grant bond hearings to aliens who evade immigration authorities, enter the United States unlawfully, and remain here unlawfully for years or even decades until an involuntary encounter with immigration authorities. That is *exactly* the "perverse incentive to enter" unlawfully, *Thuraissigiam*, 591 U.S. at 140, that IIRIRA sought to eradicate. This Court should reject any interpretation that is so transparently subversive of Congress's stated objective. *King*, 576 U.S. at 492.

The Government's reading, by contrast, not only adheres to the statute's text and congressional intent, but it also brings the statute in line with the longstanding "entry fiction" that courts have employed for well over a century to avoid giving favorable treatment to aliens who have not been lawfully admitted. Under that doctrine, all "aliens who arrive at ports of entry

… are treated for due process purposes as if stopped at the border," including aliens "paroled elsewhere in the country for years pending removal" who have developed significant ties to the country. *Thuraissigiam*, 591 U.S. at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). For example, *Kaplan v. Tod*, 267 U.S. 228 (1925), held that an alien who was paroled for nine years into the United States was still "regarded as stopped at the boundary line" and "had gained no foothold in the United States." *Id.* at 230; *see also Mezei*, 345 U.S. at 214–15. The "entry fiction" thus prevents favorable treatment of aliens who have not been admitted—including those who have "entered the country clandestinely." *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903). IIRIRA sought to implement that same principle with respect to detention. The Government's reading is true to that purpose; the district court's reading subverts it.

### E. The Supreme Court's decision in *Jennings* does not undermine the government's interpretation.

The Government's interpretation is also consistent with the Supreme Court's decision in *Jennings*, 583 U.S. 281. *Cf.* App'x at 56–57. *Jennings* reviewed a Ninth Circuit decision that applied constitutional avoidance to "impos[e] an implicit 6-month time limit on an alien's detention" under §1225(b) and 1226. 583 U.S. at 292. The Court held that neither provision is so limited. *Id.* at 292, 296–306. In reaching that holding, the Court did not—

and did not need to—resolve the precise groups of aliens subject to §1225(b) or §1226. Nonetheless, consistent with the Government's reading, the Supreme Court recognized in its description of §1225(b) that "Section 1225(b)(2) .... serves as a catchall provision that applies to all applicants for admission not covered by §1225(b)(1)." *Id.* at 287.

To be sure, *Jennings* described the detention authorities in §1225(b) and §1226, and in that context summarized §1226 as applying to aliens "already in the country":

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§1226(a) and (c).

583 U.S. at 289; *see also id.* at 288 (characterizing §1226 as applying to aliens "once inside the United States"). But "[t]he language of an opinion is not always to be parsed [like the] language of a statute," and instead "must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373–74 (2023) (quotation omitted). When describing the scope of §1226 in particular, *Jennings* refers to aliens "present in the country" who are removable under 8 U.S.C. §1227(a)—a provision that applies *only* to admitted aliens. *See* 583 U.S. at 288. The Government's interpretation is perfectly consistent with that understanding: it allows that §1226 is the

exclusive source of detention authority for the substantial category of aliens who are were admitted into the United States but are now deportable. *Supra*, p. 39.

Moreover, nothing in the quoted language from *Jennings* suggests that §1226 is the *sole* detention authority for *every* "alien[] already in the country," and the passage's use of the word "certain" conveys the opposite. At a minimum, the quoted language is ambiguous and such uncertain dicta is insufficient to displace the statute's text and the manifest congressional purpose; that is especially so, as no part of the holding in *Jennings* required resolution of the precise scope of §s 1225(b) and 1226.

**CONCLUSION**

The Court should reverse the district court's order granting the writ of habeas corpus.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BENJAMIN HAYES
*Senior Counsel to the Assistant Attorney General*

STEPHEN J. FLYNN
Assistant Director

*s/Jessica R. Lesnau*

JESSICA R. LESNAU
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
(202) 616-9346

January 16, 2026

*Counsel for Respondent-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,838 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Georgia font.

3. The electronic version of this brief has been scanned for viruses and is virus-free.

*s/ Jessica R. Lesnau*
JESSICA R. LESNAU
Trial Attorney
Office of Immigration Litigation

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on January 16, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Jessica R. Lesnau*
JESSICA R. LESNAU
Trial Attorney
Office of Immigration Litigation