25-3141-pr
*Barbosa da Cunha v. Freden*

BIANCO and NATHAN, *Circuit Judges*, joined by LEE, ROBINSON, PÉREZ, and MERRIAM, *Circuit Judges*, concurring in the denial of rehearing *en banc*:

"The sole question presented by this appeal is whether Section 1226 or Section 1225 governs Petitioner's detention." *Barbosa da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026). The government and Judge Menashi in his dissent from the denial of rehearing *en banc* argue that Section 1225 applies and that Petitioner *must* be detained without a bond hearing. As articulated by Judge Cabranes, the fanciful contention is "that Congress clearly required the Executive to detain millions of people like Petitioner—parents of American children, owners of American businesses, members of American communities—but that some thirty years passed before anyone noticed. In the meantime, fifteen Congresses stood silently by as five presidents ignored the plain text of the statute. Immigration officials also failed to grasp that Congress had told them to round up people by the millions. The capacity to carry out the largest detention in American history went unbuilt." *Id.* at 96 (Cabranes, J., concurring).

For the detailed explanation as to why this contention is wrong given the relevant statutory interpretation, we rest entirely on the underlying panel opinion, *id.* at 69–96 (majority opinion), and concurrence by Judge Cabranes, *id.* at 96–99 (Cabranes, J., concurring). The unanimous conclusion we reached follows from the plain text of the Illegal Immigration Reform and Immigrant Responsibility Act and is reinforced by the statute's context, structure, history, and purpose. It is the same conclusion reached by eight other circuits and a vast majority of district courts around the country. Unsurprisingly, then, a majority of our colleagues concur in the denial of rehearing *en banc*.

One would not know from reading Judge Menashi's dissent that this statutory question was the sole question presented by the appeal. There he advances a wholly separate argument: that Petitioner's claims are not cognizable in habeas. That was not raised by the government and accordingly not addressed by the panel. We write briefly to respond to this novel argument.[1]

[1] We do not address the novel and unrelated contentions raised by Judge Schwartz in his concurrence in the denial of rehearing *en banc*. It is not the role of judges to advise

The dissent argues that the panel erred by treating Petitioner's requested relief as cognizable in habeas, because Petitioner "did not challenge the authority of the government to *detain* him" and "did not claim he was entitled to release." *Post* at 46 (emphasis in original). Instead, the dissent contends that Petitioner "was actually seeking relief akin to a mandatory injunction or mandamus." *Id.* at 47. Setting aside that this argument was not raised or briefed—which is reason enough to deny *en banc* review—the dissent's argument is incorrect and extreme.

As a factual matter, Petitioner *did* seek release based on the unlawfulness of his detention. Petitioner claimed that, because he was arrested and detained without the procedural protections afforded by Section 1226, his "continuing detention is therefore unlawful." App'x at 18. His petition sought "a writ of habeas corpus releasing him immediately from detention, or in the alternative, directing that he be provided with a bond hearing." App'x at 11. He therefore does not resemble the petitioners in the cases on which the dissent relies. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) ("In this case, however, respondent did not ask to be released."); *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) ("Neither respondent seeks an injunction ordering his immediate or speedier release into the community."); *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("[T]he last thing petitioners want is simple release; that would expose them to apprehension by Iraqi authorities for criminal prosecution[.]").

In any event, the dissent's single-minded focus on whether Petitioner sought release is misplaced. "[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)); *see also Boumediene v. Bush*, 553 U.S. 723, 779 (2008) ("[R]elease need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."); *Thuraissigiam*, 591 U.S. at 137 (noting that *Boumediene* "reaffirmed that release is . . . not the 'exclusive' result of every writ"). The availability of habeas thus does not turn on "whether the [Petitioner] formally request[s] release from confinement[.]" *J. G. G.*, 604 U.S. at 672. The dissent's cramped contrary view comes largely from post-

---

the government as to its "options to reduce prejudice to its position." *Post* at 1. Nor is it judicious to opine on issues that have not, but may someday, come before us as neutral arbiters of the law. *See United States v. Fruehauf*, 365 U.S. 146, 157 (1961) ("[Advisory] opinions, such advance expressions of legal judgment upon issues which remain unfocused . . . , we have consistently refused to give.").

conviction cases that established the line between habeas and 42 U.S.C. § 1983, reasoning from principles inapposite here. *See, e.g.*, *post* at 47–56 (citing *Wilkinson*, 544 U.S. at 85 (Scalia, J., concurring); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

Although we will not accept the dissent's invitation to sketch the bounds of "the core of habeas corpus," *post* at 56 (quotation marks omitted), we have no doubt that Petitioner's challenge falls within it. Petitioner alleged that he could not be detained under Section 1225 and that he could only be detained under Section 1226 if the government granted him a bond hearing. App'x at 17–18. He argued, on that basis, that his detention was "unlawful, regardless of what statute might apply to purportedly authorize such detention." App'x at 20. The district court therefore properly exercised habeas jurisdiction over this case, directing that the government "conduct a constitutionally adequate bond hearing," and that, "[i]f such bond hearing is not conducted within ten (10) days of the date of this order, Petitioner shall be released from custody." *Barbosa da Cunha v. Moniz*, No. 25 Civ. 6532, Dkt. 25 (W.D.N.Y. Oct. 20, 2025). In other words, Petitioner challenged "the legality of his detention," and the district court granted "conditional release" in order to "allow[] the executive to justify or cure a defect in detention before requiring release." *Thuraissigiam*, 591 U.S. at 122. That is exactly what habeas relief is for.

The dissent argues that "compar[ing] the relief the district court ordered to a writ of 'conditional release'" is "an improper analogy." *Post* at 51–52. But conditional release is not an analogy; it is an accurate description of the relief fashioned by the district court. Such relief is standard where a detainee claims that he is "being held pursuant to the erroneous application or interpretation of relevant law." *Boumediene*, 553 U.S. at 779 (quotation marks omitted). Conditional release enables courts to exercise their "broad discretion in conditioning a judgment granting habeas relief," *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987), and spares courts from "having to choose between ordering an absolute discharge of the prisoner and denying him all relief," *Dowd v. U.S. ex rel. Cook*, 340 U.S. 206, 209–10 (1951). This case illustrates these benefits. Instead of requiring the government to release and re-detain Petitioner under the proper statutory provision, the district court gave the government an opportunity to correct its error before requiring release. Habeas thus was not used as a "tool to extort a new hearing from the government," as the dissent claims, *post* at 54–55, but as a mechanism for "removing the injury of unjust and illegal confinement," 3 W.

Blackstone, Commentaries on the Laws of England 137 (1768) (emphasis omitted).

In sum, the petition, in challenging the lawfulness of Petitioner's detention and requesting release, sought habeas relief, which the district court provided by ordering release absent a prompt bond hearing. The dissent's novel arguments to the contrary are unpersuasive.

* * *

As to the sole question presented on appeal—whether Section 1225 or Section 1226 governed Petitioner's detention—our holding was dictated by the plain text of the statute. Section 1225(b)(2)(A) "applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission.'" *Barbosa da Cunha*, 175 F.4th at 74. Petitioner, who entered the United States unlawfully more than two decades ago and has resided here ever since, was not "seeking admission" because he was not "seeking to come inside [the country] from outside." *Id.* at 97 (Cabranes, J., concurring). Accordingly, his detention was governed by Section 1226, which entitled him to a bond hearing. The dissent's "attempt to muddy these textually clear waters defies the statute's context, structure, history, and purpose[.]" *Id.* at 96 (majority opinion).

The dissent's novel argument about the scope of habeas fares no better. According to the dissent, the nine circuits and hundreds of district courts to grant habeas relief to individuals wrongly detained under Section 1225 did not have authority to do so. That is a drastic view that not even the government has advanced in this case.

Because the district court was right on the statutory question and had authority to grant habeas relief, the panel opinion correctly affirmed the decision below and our Court correctly voted to deny rehearing *en banc*.